USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: *Aug. 2, 2010*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CYNTHIA TOMPKINS,

          Plaintiff,

  -v.-

ALLIED BARTON SECURITY SERVICES,

          Defendant.

---

REPORT AND
RECOMMENDATION

09 Civ. 1954 (RMB) (JLC)

(Non-ECF Case)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Richard M. Berman, United States District Judge:**

## I.    INTRODUCTION

Plaintiff Cynthia Tompkins ("Plaintiff"), proceeding *pro se*, has filed this action against

Defendant AlliedBarton[1] Security Services ("Defendant") pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Equal Pay Act of

1963, 29 U.S.C. § 206(d)(1) ("EPA").  Plaintiff alleges discrimination in various forms based on

her race and sex, including failure to promote and hostile work environment.  *See* Third

Amended Complaint ("Third Am. Compl.") (Dckt. # 23).[2]  Defendant has moved for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  For

the reasons set forth below, I recommend that Defendant's motion be granted in its entirety.

---

[1] Defendant is incorrectly identified in the caption of this case as "Allied Barton," rather than AlliedBarton.

[2] As noted in a previous order, the numbering of the complaints in this case is incorrect. Memorandum & Order, Apr. 7, 2010 (Dckt. # 27) at 1 n.1. The document the Court refers to as the Third Amended Complaint (Dckt. # 23) is in reality a second amended complaint. Since both parties as well as the docket refer to this document as the Third Amended Complaint, the Court will use this nomenclature.



USDC SDNY
DATE SCANNED _8/2/10_ *ENM*

## II.    BACKGROUND

### A.    Facts

Unless otherwise noted, the following facts are either undisputed or are construed in the light most favorable to Plaintiff.

Plaintiff is an African-American female who has worked for Defendant, a private security company, since July 29, 2000.  Third Am. Compl. at 3; Declaration of Laura Gift dated May 17, 2010 ("Gift Decl."), attached as Exhibit B to Defendant's Motion for Summary Judgment ("Def.'s Mot.") (Dckt. # 35), ¶¶ 3, 12.  Defendant provides security services at locations owned and operated by third parties, including various departments of the City of New York (the "City").  Gift Decl., ¶ 3.  On March 22, 2008, Plaintiff was assigned to work at a facility owned and operated by the New York Department of Transportation ("NYDOT"), a subdivision of the City, at 3200 Conner Street (the "NYDOT Facility").  *Id.*, ¶ 13.  Jeff Bermudez was the AlliedBarton manager responsible for the NYDOT Facility.  Declaration of Jeff Bermudez dated May 18, 2010 ("Bermudez Decl."), attached as Exhibit C to Def.'s Mot., ¶ 2.

A contract between Defendant and the New York City Department of Citywide Administrative Services ("DCAS") governs the terms and conditions under which Defendant provides security services to City facilities (the "DCAS Contract").  Gift. Decl., ¶ 4.  Under this contract, the City agency responsible for a particular site provides a work order setting forth the number and the classification of guards to be assigned to the site.  *Id.*, ¶ 5.  Guards are classified as Level I or Level II guards, armed guards, or supervisors.  *Id.*  Among the DCAS Contract's many terms are professional requirements that employees must meet in order to be Level II guards.  DCAS Contract, excerpts attached as Exhibit E to Def.'s Mot., at 13-14; Gift Decl., ¶ 6.  The contract also sets forth the wages of Level I and Level II guards.  Gift Decl., ¶ 8.  Plaintiff

was a Level I guard when she began work at the NYDOT Facility.  Deposition of Cynthia Tompkins dated February 23, 2009[3] ("Tompkins Dep."), excerpts attached as Exhibit D to Def.'s Mot. and as Exhibit A to Declaration of Janet Linn dated July 14, 2010 ("Linn Decl."), in Support of Defendant's Reply Brief in Support of Its Motion for Summary Judgment (Dckt. # 45), at 139:14-18.

On March 26, 2009, NYDOT official Robert Walker informed AlliedBarton managers, including Bermudez, that NYDOT inspector Vernon Small had found Plaintiff asleep at her post earlier that day.  Bermudez Decl., ¶ 6; Email from Robert Walker to Jeff Bermudez dated March 26, 2009 ("Walker Email"), attached as Exhibit G to Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment ("Def.'s Mem.") (Dckt. # 35).  Walker requested that Plaintiff be removed from all NYDOT sites.  Bermudez Decl., ¶ 6.  Bermudez accordingly removed Plaintiff from the NYDOT Facility and replaced her with another employee.  *Id.*, ¶ 7.  Bermudez attempted to inform Plaintiff of these actions but was unable to contact her before her next scheduled shift two days later, on March 28, at which time she learned of her removal and was told to go home.  *Id.*; Tompkins Dep. at 100:8-101:25.  Though Plaintiff and Bermudez apparently spoke by phone more than once after Plaintiff discovered that she had been removed, they did not speak substantively about the situation until several days thereafter.  Tompkins Dep. at 110:4-11.

Bermudez placed Plaintiff on temporary assignments each day between April 4 and April 7, 2009, giving her full shifts at two different locations.  Bermudez Decl., ¶ 9.  On April 10, three days after Plaintiff's temporary work ended, Bermudez assigned Plaintiff to a full-time position

---

[3] The deposition transcript is dated February 23, 2009.  Given the sequence of events in this case, particularly the fact that Plaintiff did not commence this action until March 4, 2009, this deposition must have taken place on February 23, 2010.

at a facility operated by the New York Administration for Children's Services ("ACS"), another City department, at 1259 East 229th Street (the "ACS Facility").[4] *Id.*, ¶ 10. Plaintiff continues to work there today. *Id.*

## B.    Procedural History

Plaintiff initiated the instant action on March 4, 2009, by filing a Complaint alleging violations of the Equal Pay Act. Complaint (Dckt. #2) at 2. Plaintiff's EPA claim is based on her contention that most of Defendant's Level II guards, who are paid a higher wage than Level I guards, are male. Handwritten Notes attached to Compl. When she filed her Complaint, Plaintiff had not yet been caught asleep at her post. On April 9, 2009, shortly before she was permanently assigned to the ACS Facility, Plaintiff filed an Amended Complaint. The Amended Complaint included additional documentation and, for the first time, a description of the events leading up to her removal from the NYDOT Facility. Amended Complaint (Dckt. # 6). It alleges no new violations and is otherwise similar to the Complaint.

Plaintiff's Third Amended Complaint, filed December 9, 2009, asserts Title VII claims alleging race and gender discrimination. Third Am. Compl. at 1. The Third Amended Complaint does not allege violations of the EPA, but it incorporates by reference the description of events attached to the Amended Complaint, which does allege such violations. *Id.* at 3. Plaintiff twice moved to amend her Third Amended Complaint; the Court denied both motions. (Dckt. ## 21, 22, 27, 28). Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[4] The parties disagree about the address of this facility, which Plaintiff identifies as 1250 East 229th Street. *See* Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1 Stmt."), attached to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") (Dckt. # 40), ¶ 41. There is no question, however, that the parties are referring to the same facility.

## III.   DISCUSSION

### A.   Summary Judgment Standard

A court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(C)(2); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A material fact is a fact that might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, a court must resolve ambiguities and draw factual inferences in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). If the moving party meets its initial burden of showing that no genuine issue of material fact exists, the nonmoving party must provide the court with "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.* at 256; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[A non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts.") (citing cases).

A court must be "especially cautious" when granting summary judgment in an employment discrimination case since direct evidence of an employer's intent to discriminate is rare, and since careful scrutiny of the record may reveal relevant circumstantial evidence of such intent. *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (citing cases). "Nonetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (internal

quotation marks and further citations omitted).  A court, moreover, must read a *pro se* litigant's submissions liberally and "interpret them so as to raise the strongest arguments that they suggest." *Stancuna v. New Haven Legal Assistance Inc.*, No. 09-4827-cv, 2010 WL 2616873, at *1 (2d Cir. June 30, 2010) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006)) (internal quotation marks omitted).  "*Pro se* status, however, does not relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Dixon v. Zenk*, 361 F. App'x 218, 219-220 (2d Cir. 2010) (quoting *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir. 2003)) (internal quotation marks omitted.).

## B.    Title VII Claims

The Court construes the Third Amended Complaint to assert claims against Defendant for (1) sex and race discrimination based on her transfer to the ACS Facility; (2) failure to promote; (3) hostile work environment; and (4) unequal terms and conditions of employment.  Third Am. Compl. at 2-3.  Under Title VII, an employer may not discriminate against any employee with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1) (2006). Cases such as this one, based on circumstantial evidence, are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green.*  411 U.S. 792 (1973); *accord St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *Joseph v. Leavitt*, 465 F.3d 87 (2d Cir. 2006).  The initial burden lies with the plaintiff, who must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802.  To prove a prima facie case, a plaintiff must show four factors: (1) the plaintiff is a member of a protected class; (2) the plaintiff's job performance was satisfactory; (3) the plaintiff suffered an adverse employment action; and (4) the action occurred

under conditions giving rise to an inference of discrimination. *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802). A plaintiff who establishes a prima facie case creates a "legally mandatory, rebuttable presumption" of discrimination. *Burdine*, 450 U.S. at 254 n.7 (1981).

If a plaintiff creates such a presumption, the burden shifts to the defendant to rebut it by providing a "legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 254; *McDonnell Douglas*, 411 U.S. at 802. If the defendant is successful, the burden shifts back to the plaintiff, who must prove that the explanation proffered by the plaintiff is pretextual. 411 U.S. at 804-05. Though the burden of production shifts between the parties, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 253).

### 1.     Sex and Race Discrimination Claims Based on Plaintiff's Transfer

Plaintiff claims sex and race discrimination based on her transfer to the ACS Facility and the events leading thereto. Handwritten notes attached to Am. Compl. ("Am. Compl. Notes"), ¶ 4. Plaintiff's claims fail for two reasons. First, she does not prove a prima facie case of discrimination. Second, Defendant has proffered a "legitimate, non-discriminatory reason" for transferring Plaintiff, and Plaintiff is unable to demonstrate that this reason is pretextual.

### a.     Prima Facie Case

Plaintiff is an African-American woman and therefore a member of a protected class. Third Am. Compl. at 3. There is thus no dispute as to the first element of a prima facie case under *McDonnell Douglas*. *See Hall v. New York City Dep't of Transp.*, No. 06-CV-2908 (KAM) (LB), 2010 WL 1260198, at *14 (E.D.N.Y. Mar. 30, 2010). Lacking, however, are the

remaining factors. Based on the record, Plaintiff cannot establish either satisfactory job performance or an adverse employment action. As a result, she cannot prove that any adverse action arose under conditions giving rise to an inference of discrimination.

First, Plaintiff does not prove that her job performance was satisfactory. As Plaintiff admits, her job as a security officer required her to remain "alert," "vigilant," and "aware of [her] surroundings." Tompkins Dep. at 89:13-90:13; *see* Bermudez Decl., ¶ 3. AlliedBarton's Security Officer Handbook (the "Handbook") expressly prohibits "[s]leeping or dozing while on duty." Handbook, excerpts attached as Exhibit F to Def.'s Mot., at 14. Plaintiff, however, concedes that she was caught sleeping while on duty. Bermudez Decl., ¶ 6; Walker Email; Tompkins Dep. at 106:3-22. In light of the factual record, Plaintiff's job performance was clearly unsatisfactory. *Cf. Riddle v. Liz Claiborne, Inc.*, Nos. 00 Civ. 1374 (SAS), 03 Civ. 8798 (SAS), 2006 WL 3057289, at *7 (S.D.N.Y. Oct. 27, 2006) (plaintiff's "fail[ure] to perform tasks correctly, overreact[ion] to criticism and complain[ts] to the company CEO" was evidence of unsatisfactory job performance); *McLee v. Chrysler Corp.*, 926 F. Supp. 443, 446 (S.D.N.Y. 1996) ("[Defendant's] undisputed evidence of plaintiff's substandard job performance, confirmed by plaintiff's own admissions, preclude his [proving a prima facie case].").

Second, Defendant's actions after Plaintiff was found asleep on duty did not constitute an adverse employment action. "An adverse employment action occurs when there is a materially adverse change in the terms and conditions of employment. A materially adverse change must be more disruptive than a mere inconvenience or an alteration of job responsibilities . . . ." *Hrisinko v. New York City Dep't of Educ.*, No. 08-6071-cv, 2010 WL 826879, at *2 (2d Cir. Mar. 11, 2010) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000)) (internal quotation marks omitted).

After she was caught sleeping, Defendant transferred Plaintiff from the NYDOT Facility to the ACS Facility, where she still works. Bermudez Decl., ¶ 10. This transfer, however, was not an adverse employment action. "The mere fact that an employee has been transferred or that [her] job responsibilities have changed is not sufficient in itself to show an adverse change in working conditions." *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 532 (S.D.N.Y. 2002) (quoting *Cooper v. New York State Dep't of Human Rights*, 986 F. Supp. 825, 828 (S.D.N.Y. 1997)). A transfer may be an adverse action, however, if it "alters the terms and conditions of the plaintiff's employment in a materially negative way." *Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) (citations omitted). Plaintiff notes that her duties at the ACS Facility are not identical to her duties at the NYDOT Facility: she points out that, at her new job, she must "hand wand" and "screen" residents and that "[t]his is more work." Pl.'s 56.1 Stmt., ¶ 37. The changes Plaintiff identifies, however, do not constitute a "materially negative change" as required under *Patrolmen's Benevolent Ass'n*. As Plaintiff herself admits, the jobs are "basically the same." Tompkins Dep. at 98:19-21. After her transfer, Plaintiff's pay rate remained the same, she worked the same number of hours, and her basic job functions did not change. Tompkins Dep. at 97:5-98:21. Moreover, she was given a "straight shift,"[5] a schedule she had wanted and did not have at the NYDOT Facility. *Id.* at 90:25-91:2, 97:2-9. Her transfer thus cannot be characterized as an adverse employment action.[6]

---

[5] A straight shift consists of a schedule in which an employee works the same hours (e.g., 6:30 a.m. to 2:30 p.m.) each day that he or she works.

[6] Plaintiff appears further to claim that Bermudez threatened her with termination. Pl.'s 56.1 Stmt., ¶ 12. The vast majority of courts in this circuit have held that a threat alone does not constitute an adverse employment action. *See, e.g., Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 139 (S.D.N.Y. 2009) ("[A]n action must actually occur to be considered an adverse employment action."); *Bowles v. New York City Transit Auth.*, Nos. 00 Civ. 4213 (BSJ) (MHD), 03 Civ. 3073 (BSJ) (MHD), 2006 WL 1418602, at *10 & n.21 (S.D.N.Y. May 23, 2006) (collecting cases). *But see Khan v. Fed. Reserve Bank of New York*, No. 02 Civ. 8893 (JCF),

Plaintiff further asserts that she was "out of work for over two weeks" between her removal from the NYDOT Facility and her reassignment to the ACS Facility, and that this delay constitutes an adverse employment action. *See* Pl.'s Mem. at 1. The record, however, reveals a different timeline than the one Plaintiff asserts. Plaintiff was caught asleep at her post on March 26, 2009. Bermudez Decl., ¶ 6. She learned she had been removed from the schedule two days later, on March 28, when she reported for work. Tompkins Dep. 100:4-10. Plaintiff was assigned temporary positions on April 4, 5, 6, and 7. Bermudez Decl., ¶ 9. She was placed permanently at the ACS Facility three days later, on April 10. *Id.*, ¶ 10. Plaintiff was not, as she contends, out of work for more than two weeks. She did not work for seven days between March 28, when she learned of her removal from the NYDOT Facility, and April 4, when Defendant placed her in a temporary position. After her temporary work came to an end, Plaintiff was assigned to a permanent position after only two more days without work. Given this timeline, the delay between her removal from the NYDOT Facility and her placement at the ACS Facility cannot be said to have been an adverse employment action. *Cf. Warren v. N. Shore Univ. Hosp. at Forest Hills*, 268 F. App'x 95, 98 (2d Cir. 2008) (citations omitted) (delay in employee's transfer does not constitute adverse employment action).

### b.    Pretext

Assuming, *arguendo*, that Plaintiff is able to establish a prima facie case of discrimination, Defendant offers a legitimate, nondiscriminatory rationale for her transfer: NYDOT, Defendant's client, requested it. Courts in this circuit have found that client complaints about, and requests not to work with, particular employees constitute legitimate

---

2005 WL 273027 (S.D.N.Y. Feb. 2, 2005) ("[T]he threat of an adverse action is sufficient to meet this element of the prima facie case, provided that the plaintiff can prove that the employer is in fact intransigent and that the threatened action is causally related to the conflict between the employer's policy and the plaintiff's religion.").

reasons for adverse employment actions.  *See, e.g., Jackson v. Citiwide Corporate Transp., Inc.*, No. 02 Civ. 1323 (DC), 2004 WL 307243, at *4 (S.D.N.Y. Feb. 17, 2004) (granting summary judgment in employment discrimination case when client complained about employee's rudeness and failure to perform job functions adequately); *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 531 (E.D.N.Y. 2005) (suspension based on client complaints legitimate and nondiscriminatory).  The evidence on record demonstrates that Defendant's client requested that Plaintiff be removed from the NYDOT Facility.  Walker Email; Bermudez Decl., ¶¶ 6-7. Defendant thus meets its burden of providing a legitimate, nondiscriminatory rationale for Plaintiff's transfer.

Since Defendant has met its burden, Plaintiff must prove that the rationale Defendant offers is pretextual.  To do so, she must show both that the proffered rationale is false and that the true reason for her transfer was her race or sex.  *St. Mary's*, 509 U.S. at 515 (citing *Burdine*, 450 U.S. at 253).  Her first argument to this effect is that similarly situated employees outside of her protected class were treated more favorably than she was.  To support this assertion, Plaintiff points to Defendant's treatment of three other guards: Jose Carasquillo, a Hispanic male; Gary Cooper, an African-American male; and Aja Gonzalez, a Hispanic female.  *See* Pl.'s 56.1 Stmt., ¶¶ 12, 14, 27; Declaration of Aja Gonzalez in *Gonzalez v. Allied Barton Sec. Servs.* dated June 10, 2010 ("Gonzalez Decl."), attached as Exhibit B-1 to Pl.'s Mem., ¶ 1.  Such a showing may "serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for unlawful discrimination, but only if the plaintiff shows that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Iuorno v. DuPont Pharm. Co.*, 129 F. App'x 637, 640 (2d Cir. 2005) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)) (internal quotation marks and

further citations omitted).  Plaintiff fails to meet this standard, as all three cases are readily distinguishable.

First, Plaintiff argues that she was treated less favorably than Jose Carasquillo, who, like Plaintiff, was caught asleep on the job at the NYDOT Facility.  The record, however, indicates that this is not the case.  As it would later do with Plaintiff, NYDOT requested that Carasquillo be removed from the NYDOT Facility.  Supplemental Declaration of Jeff Bermudez dated July 13, 2010 ("Bermudez Supp. Decl."), attached as Exhibit B to Linn Decl., ¶ 8.  Accordingly, Bermudez removed Carasquillo on July 2, 2008.  *Id.*  Because no position was open at the time, Carasquillo was out of work for approximately six days and was then given temporary, part-time employment for approximately three weeks.  *Id.*, ¶ 10.  Bermudez placed Carasquillo in the first position to come open.  *Id.*, ¶ 11.  Carasquillo's new position was at 1932 Arthur Avenue, a location staffed with only Level II guards who command a higher wage than Level I guards at the NYDOT Facility.  *Id.*, ¶ 2-3, 10.  As a result, Carasquillo was effectively given a raise upon his transfer.  *Id.*, ¶ 11.  Since the DCAS Contract governs staffing and wages, Defendant did not have the ability to change the staffing arrangements or wages at 1932 Arthur Avenue.  *Id.*, ¶ 3.  Plaintiff argues that the fact that Carasquillo was given a higher wage after his transfer while Plaintiff was not supports an inference of pretext.  Defendant, however, offers two legitimate explanations.  First, Carasquillo, like Plaintiff, was placed in the first open position available.  *Id.*, ¶¶ 11, 14.  Second, assigning Carasquillo to 1329 Arthur Avenue minimized staff turnover and the need to train employees.  *Id.*, ¶ 13.  Defendant thus treated Carasquillo and Plaintiff similarly: each was removed from the NYDOT Facility, and was placed in the first available open position.  Plaintiff does not rebut these explanations.

12

Second, Plaintiff compares her case to that of Gary Cooper, who, she claims, was treated more favorably than she was. Pl.'s 56.1 Stmt., ¶ 14. Cooper was caught sleeping on the job, received a warning, and was later terminated when he was caught sleeping a second time. Declaration of Kelly Mechaley in *Cooper v. AlliedBarton Sec. Servs.* dated September 30, 2009, attached as Exhibit B-5 to Pl.'s Mem., ¶¶ 4-8.[7] Plaintiff argues that she, like Cooper, should have been given a warning before any action was taken after she was caught asleep at her post. Cooper and Plaintiff, however, are not similarly situated. First, Kelly Mechaley, not Jeff Bermudez, made employment decisions about Cooper. *Id.*, ¶ 10. Employees who report to different supervisors are not similarly situated. *Iuorno*, 129 F. App'x at 640-41 (employees working in different departments and reporting to different supervisors not similarly situated); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (same); *Martinez-Santiago v. Zurich N. Am. Ins. Co.*, No. 07 Civ. 8676 (RJH), 2010 WL 184450, at *8 (S.D.N.Y. Jan. 20, 2010) ("In order to be similarly situated . . . , other employees must have had the same supervising team leader as the plaintiff.") (citing cases). Second, there is no evidence that an AlliedBarton client requested that Cooper be removed from his position after he was found sleeping. Such a request is relevant because it provides the rationale for Defendant's actions concerning Plaintiff.

Third, Plaintiff points to Aja Gonzalez, who was terminated after she was caught sleeping once. Gonzalez Decl., ¶ 1. Plaintiff appears to argue that Gonzalez, like Plaintiff, was unfairly treated because she is a woman. Pl.'s 56.1 Stmt., ¶ 14. The decision to fire Gonzalez, however, was made by Brian Fogarty, not Bermudez. Declaration of Brian Fogarty in *Gonzalez v. Allied*

---

[7] Judge Gardephe recently granted AlliedBarton's summary judgment motion in the *Cooper* case. *See* Exhibit D to Linn Decl.

*Barton Sec. Servs.*, attached as Exhibit C to Linn Decl., ¶ 6.  Gonzalez was therefore not situated similarly to Plaintiff. [8]

Plaintiff's second attempt to prove that Defendant's proffered rationale is pretextual regards NYDOT employee Robert Walker.  Specifically, she claims that "Walker does not want female guards working the evening shift because he believes that female guards are not as competent as male guards."  Pl.'s Mem. at 3.  She fails to point to any evidence in the record to support this allegation, however, and "speculation and conjecture" are insufficient to defeat summary judgment.  *See Resource Developers, Inc. v. Statute of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir. 1991) (citing cases).  She does claim to have heard from another employee that Walker stated that "female[] security officer[s] should not be on the overnight shift."  Tompkins Dep. at 133:19-134:3.  This is inadmissible hearsay testimony that the Court may not consider on summary judgment.  Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) ("[Plaintiff] cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial.") (internal citations omitted).  Irrespective of admissibility, furthermore, Walker is a NYDOT employee, not an employee of AlliedBarton.  Moreover, it was Bermudez, an AlliedBarton manager, who made the decision to transfer Plaintiff.  Bermudez Decl., ¶ 7.

---

[8] Plaintiff also points to cases involving several other employees: Kyle Jiggetts, Donna Leak, Earl Forsythe, and Susie Beckman. *See* Pl.'s Mem., Exhibits A-10, B, B-2, B-3.  Plaintiff, however, has not demonstrated that she and these employees were similarly situated, since none of them appear to have been caught sleeping on the job or committing any violation listed in the Handbook.

Plaintiff has not demonstrated that Defendant's proffered rationale was false or that race or sex discrimination was the true reason for her transfer. *See St. Mary's*, 509 U.S. at 515. In light of this fact and of Plaintiff's inability to prove a prima facie case of discrimination, I recommend that Plaintiff's claims arising from her transfer to the ACS Facility be dismissed.

### 2.    Failure to Promote

Plaintiff also alleges that Defendant failed to promote her on account of her race and gender. A plaintiff seeking to prove a prima facie case of discrimination for failure to promote under Title VII must prove four factors: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she applied for and was denied promotion to a position for which she was qualified; and (4) the position remained open and the employer continued to seek applicants. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). As previously discussed, Plaintiff is a member of a protected class. With respect to the second element, there is no evidence in the record to indicate whether Plaintiff's job performance was satisfactory, since the events giving rise to this claim occurred before plaintiff was caught sleeping. Drawing all inferences in Plaintiff's favor, the Court presumes that Plaintiff's job performance was satisfactory with respect to this claim.

Plaintiff, however, does not prove the third or fourth elements of a prima facie case. The third element requires that she have applied to a position for which she was qualified. Plaintiff asked to be promoted to the position of Level II guard multiple times while working at the NYDOT Facility. Tompkins Dep. at 137:11-24, 140:3-5; Bermudez Decl., ¶ 5. Bermudez, however, was unaware of any openings for Level II guards and told Plaintiff as much. Bermudez Supp. Decl., ¶ 15; Tompkins Dep. at 137:13-20, 140:3-5. Moreover, Plaintiff never applied for an open Level II position. Instead, she "merely stated her insistence that she . . . be made a Level

II guard."[9]  Bermudez Supp. Decl., ¶ 15.  Regardless of Plaintiff's qualifications, she clearly did

not apply to a position for which she was qualified, since no such position existed during the

times she voiced her requests to be promoted.[10]  *See Burdine*, 450 U.S. at 253 ("[P]laintiff must

prove by a preponderance of the evidence that she applied for an *available* position for which she

was qualified . . . .") (emphasis added); *Hudson v. Int'l Bus. Machs. Corp.*, 620 F.2d 351, 354

(2d Cir. 1980) (plaintiff's failure-to-promote claim failed due to lack of evidence that position

was available when plaintiff applied); *Baker v. Nat'l R.R. Passenger Corp.*, No. 94 Civ. 0856

(JFK), 1997 WL 53237, at *8 (S.D.N.Y. Feb. 7, 1997) (without proof position was available

when plaintiff applied for it, plaintiff's discrimination claim failed) (citing cases).  Because no

Level II position was vacant, Plaintiff does not satisfy the fourth element of a prima facie case,

either.

       Because Plaintiff fails to prove a prima facie case for discrimination for failure to

promote, I recommend that this claim be dismissed.

---

[9] Plaintiff's failure-to-promote claim seems to be based on a misinterpretation of the
DCAS Contract, which governs both NYDOT and ACS sites.  Plaintiff appears to believe that,
upon meeting certain requirements as set forth in the contract, an AlliedBarton employee is
automatically made a Level II guard.  *See* Tompkins Dep. 137:25-138:21.  The contract,
however, merely lists requirements for Level II guards: it does not guarantee that an employee
meeting those requirements will be elevated to a Level II position.  *See* DCAS Contract at 13-14;
Gift Decl., ¶ 7.  Plaintiff's misunderstanding also is the basis for a breach-of-contract claim
alleging that Defendant did not pay Level II guards the wage specified in the DCAS Contract.
Am. Compl. Notes, ¶ 3.  Plaintiff, however, is not a party to the DCAS contract and cannot sue
to enforce its terms.  "A non-party to a contract governed by New York law lacks standing to
enforce the agreement in the absence of terms that 'clearly evidence[] an intent to permit
enforcement by the third party' in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d
103, 108 (2d Cir. 2009) (alteration in original) (quoting *Fourth Ocean Putnam Corp. v. Interstate
Wrecking Co.*, 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985)).

[10] Plaintiff alleges that there was an open Level II position at 1932 Arthur Avenue.
Def.'s Mem. at 2.  Bermudez, however, had already promised that position to Fernando
Oquendo, who had worked at that site previously and had requested to transfer back.  Bermudez
Supp. Decl., ¶¶ 4-6.

### 3.   Hostile Work Environment

To establish a claim of hostile work environment under Title VII, a plaintiff must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is *sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment*." *Kaytor v. Elec. Boat Corp.*, __ F.3d __, No. 09-1859-cv., 2010 WL 2593500, at *9 (2d Cir. June 29, 2010) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (emphasis in original) (internal quotation marks omitted).  Furthermore, there must be a basis for imputing the harassment to the plaintiff's employer. *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)) (further citations omitted).

Plaintiff's claim fails as to both elements.  Regarding the first, Plaintiff admits in her deposition that she was not subjected to discriminatory harassment based on either her race or sex.  Tompkins Dep. at 111:11-16.  Rather, the basis of her claim is that NYDOT inspector Vernon Small photographed Plaintiff, without her consent, while she was sleeping at her post. *Id.* at 111:19.  Plaintiff points to no evidence indicating that Small took any action because of Plaintiff's membership in a protected class.  Even if she had such evidence, "[i]solated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe." *Kaytor*, 2010 WL 2593500, at *10 (citations omitted).  Given that this incident involved only the taking of a single photograph while Plaintiff slept, it cannot be considered severe. *See id.*, at *9-10 ("[T]he analysis of severity and pervasiveness looks to the totality of the circumstances.").  As for the second element, Plaintiff charges Vernon Small with harassment, but Small is a NYDOT employee, not an AlliedBarton employee, and Plaintiff offers no reason to impute any harassment arising from his actions to AlliedBarton, the only defendant in this case.

Given the evidence in the record, I recommend that Plaintiff's Title VII claim for hostile work environment be dismissed.

### 4.    Unequal Terms and Conditions of Employment Claims

Plaintiff asserts several other claims against Defendant under Title VII.  The Third Amended Complaint alleges that Plaintiff was denied leave granted to other employees.  Am. Compl. Notes, ¶ 4.  In her deposition, Plaintiff alleges inconsistent enforcement of rules with respect to standards of attire and the hiring of family members of employees.[11]  Tompkins Dep. at 119:14-23.  None of these claims were part of the charge of discrimination that Plaintiff filed with the EEOC.[12]  *See* Plaintiff's EEOC Charge dated July 29, 2009 ("EEOC Charge"), attached as Exhibit H to Def.'s Mot.

Plaintiff's EEOC charge alleged ongoing race and sex discrimination.  *Id.* at 3.  She contended that she was discriminated against in three ways.  First, she asserted that she should have been given a straight shift at the NYDOT Facility.[13]  Handwritten Notes attached to EEOC

---

[11] In her later court filings, Plaintiff further alleges the second of these inconsistent-enforcement claims.  Pl.'s 56.1 Stmt. at 3.

[12] Moreover, Plaintiff did not properly raise either of the latter two allegations in any of her complaints.  The Court, however, is mindful that it must read *pro se* filings liberally and that it must not lightly dismiss an employment discrimination lawsuit.  Out of an abundance of caution, therefore, the Court will consider all of Plaintiff's claims.

[13] Plaintiff does not bring this claim in any complaint.  In her deposition, she admits that she did not tell anyone she "would rather work a straight shift."  Tompkins Dep. at 91:5-7.  In her Rule 56.1 Statement, she offers unsworn testimony in direct contradiction to this deposition testimony, stating that she requested a straight shift.  Pl.'s 56.1 Stmt, ¶ 46.  "However, a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)) (further citation omitted).  Furthermore, denial of a shift change request does not constitute an adverse employment action.  *See Bunis v. Runyon*, No. 94 Civ. 2063 (JFK), 1997 WL 639241, at *3 (S.D.N.Y. Oct. 16, 1997) (citing *Garber v. New York City Police Dep't*, No. 95 Civ. 2516 (JFK), 1997 WL 525396, at *7 (S.D.N.Y. Aug. 22, 1997) (further citation omitted); *see also Constance v. Pepsi Bottling Co. of*

Charge, ¶ 2. Second, she alleged discrimination based on her transfer to the ACS Facility. *Id.*, ¶¶ 3-6. Third, she asserted that she was harassed when Vernon Small took her photograph. *Id.*, ¶ 6.

In general, a plaintiff may bring a Title VII claim in federal court only after exhausting her administrative remedies by "filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)) (further citations omitted). However, a plaintiff may bring a claim not raised in a charge with such an agency if the claim is "reasonably related" to the charge. *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). According to the Second Circuit, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)) (alteration in original). "The 'reasonably related' exception . . . is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering." *Id.* (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)) (internal quotation marks omitted).

Defendant contends that Plaintiff's Title VII claims based on unequal terms and conditions are not reasonably related to her EEOC charge and are thus not properly before the

---

*New York*, No. 03-CV-5009 (CBA) (MDG), 2007 WL 2460688, at *18 (E.D.N.Y. Aug. 24, 2007) ("[C]ourts have consistently rejected claims of discrimination arising from assignment of unwanted work schedules.") (citing cases).

Court. Def.'s Mem. at 15-17. However, given that Plaintiff is a *pro se* litigant and that she charges ongoing race and sex discrimination, the claims alleged in the Third Amended Complaint and elsewhere in the record fall within the scope of an EEOC investigation and are reasonably related to the EEOC charge. Furthermore, given the liberality with which a court must read a *pro se* litigant's court filings, the Court will address all of the claims based on unequal terms and conditions outlined above under the *McDonnell Douglas* burden-shifting framework.

Plaintiff cannot establish a prima facie case for any of the three claims she alleges. She first contends that Jeff Bermudez improperly denied two requests by Plaintiff for time off from work. Third Am. Compl. Notes, ¶ 4; Tompkins Dep. at 124:22-128:24; Bermudez Decl., ¶ 13. Denial of two requests for time off does not constitute an adverse employment action. *Ebanks v. Neiman Marcus Grp., Inc.*, 414 F. Supp. 2d 320, 333 (S.D.N.Y. 2006). Moreover, Defendant offers a legitimate, nondiscriminatory reason for the denials: on both occasions, Bermudez was unable to find anyone to cover Plaintiff's shift. Bermudez Decl., ¶ 13. When Bermudez was able to find coverage, he granted Plaintiff's requests. *Id.*; Tompkins Dep. at 125:14-16. Plaintiff introduces no evidence that this rationale is pretextual.

Plaintiff next argues that work rules regarding proper attire were inconsistently enforced. She states that she received a "write-up" for being out of uniform, but that a male employee out of uniform received no write-up. Tompkins Dep. at 157:9-161:16. However, Plaintiff admits that this alleged inconsistent enforcement was not based on race or sex. *Id.* at 170:20-171:15. Additionally, "the receipt of a . . . notice of discipline does not constitute an adverse employment action." *Magilton v. Tocco*, 379 F. Supp. 2d 495, 507 (S.D.N.Y. 2005) (citing *Weeks v. New York State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001)).

Finally, Plaintiff contends that Defendant's anti-nepotism policy was inconsistently enforced: Bermudez refused to hire Plaintiff's son but allowed two Hispanic siblings to work a shift together. Pl.'s 56.1 Stmt. at 3; Tompkins Dep. at 175:8-176:14. Failure to hire a person related to Plaintiff, however, does not constitute an adverse employment action against Plaintiff herself. "[E]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." *Cunningham v. New York State Dep't of Labor*, 326 F. App'x 617, 619 (2d Cir. 2009) (citations omitted).

Because Plaintiff fails to establish a prima facie of unequal terms and conditions of employment under Title VII, I recommend that these claims be dismissed.

### C.     Equal Pay Act Claim

Plaintiff's Complaint and Amended Complaint allege that Defendant violated the EPA. (Dckt. # 6). Though the Third Amended Complaint does not assert such a claim, the Court, reading Plaintiff's filings liberally, will address it.

Under the EPA, an employer is required to pay employees of both sexes at the same rate for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1) (2006). To prove a violation of the EPA, a plaintiff must prove that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *Belfi*, 191 F.3d at 135 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995)); *accord Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).

Plaintiff does not meet this burden. Her claim appears to be based on the fact that Defendant compensated her at the rate corresponding to Level I guards, but she believes she

21

should have been paid as a Level II guard. *See* Tompkins Dep. at 195:24-196:5. The EPA, however, does not recognize such a basis for a claim. To prove even the first element of a violation of the EPA, Plaintiff must prove at the outset that Defendant paid female guards in one category (e.g., Level I guards) lower wages than it paid male guards in the same category. She does not. Instead, Plaintiff asserts that more males than females are Level II guards. Pl.'s 56.1 Stmt. ¶ 8; see Am. Compl. Notes, ¶¶ 1-2.[14] Because Plaintiff cannot prove the first element of an EPA claim, she cannot prove the second or third elements, both of which are contingent upon her proving the first.

Because Plaintiff does not prove any of the elements of a claim under the EPA, I recommend that her claims under this statute be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that Defendant's motion for summary judgment be granted in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

---

[14] In response, Defendant offers figures indicating that 30% of its workforce is female, but 35% of its Level II guards are female. Gift Decl., ¶ 9. Plaintiff replies that she is "not sure of [the] statistics." Pl.'s 56.1 Stmt., ¶ 9.

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Am*, 474 U.S.

140 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993);

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.

1992); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v.

Canadair Ltd.*, 838 F.2d 55, 57-59 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38

(2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Plaintiff does not have access to

cases cited herein that are reported on LexisNexis or Westlaw, she should request copies from

Defendant's counsel.  *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) (noting that court

may ask opposing counsel to provide to *pro se* litigant copies of decisions available

electronically).


Dated: New York, New York
      July 30, 2010

JAMES L. COTT
United States Magistrate Judge

Copies mailed to:

Cynthia Tompkins
816 E. 214th Street, P.H.
Bronx, NY 10467

Janet B. Linn
Eckert Seamans Cherin & Mellott, LLC
10 Bank Street, Suite 1061
White Plains, NY 10606

Marty N. Martenson
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E., Suite 400
Atlanta, GA 30326

Matthew D. Crawford
Martenson, Hasbrouck & Simon LLP
3379 Peachtree Road, N.E., Suite 400
Atlanta, GA 30326

Steven Robert Kramer
Eckert, Seamans, Cherin & Mellott LLC
10 Bank Street
White Plains, NY 10606

Geraldine Ann Cheverko
Eckert, Seamans, Cherin & Mellott LLC
10 Bank Street, Suite 1061
White Plains, NY 10606

Judge Richard M. Berman